FILED - GR
November 13, 2008 3:46 PM
RONALD C. WESTON, SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: rmw /

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| Linda Cook, | ) | |
| Plaintiff, | ) ) ) | **1:08-cv-1066** |
| v. | ) ) ) | Hon. **Janet T. Neff** U.S. District Judge |
| Progressive Financial Services, Inc., a Pennsylvania corporation, | ) ) ) ) | |
| Defendant. | ) ) | |

**Complaint**

### I.  Introduction

1. This is an action for damages and declaratory relief, brought against a debt collector in response to the debt collector's practices which violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and the Michigan Collection Practices Act ("MCPA"), M.C.L. § 339.901 *et seq.*

### II.  Jurisdiction

2. This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Declaratory relief is available pursuant to 28 U.S.C. § 2201. Venue in this judicial district is proper because the pertinent events took place here.

### III.  Parties

3. Plaintiff Linda Cook is an adult natural person, residing in Kent County, Michigan. Ms. Cook is a "consumer" and "person" as the terms are defined and used in the

1

FDCPA. Ms. Cook is a "consumer," "debtor" and "person" as the terms are defined and used in the MCPA.

4. Defendant Professional Financial Services, Inc. ("PFS") is a Pennsylvania corporation, which according to its website (www.progressivefinancial.com) does business in Tempe, Arizona, Eddystone, Pennsylvania, and elsewhere. The registered agent for PFS in Michigan is CSC-Lawyers Incorporating Service, 601 Abbott Road, East Lansing, Michigan 48823. PFS is licensed (No. 2401002131) by the State of Michigan to collect debts in Michigan. PFS is a "debt collector" as the term is defined and used in the FDCPA. PFS is a "collection agency" and a "licensee" as the terms are defined and used in the MCPA.

**IV. Facts**

5. Ms. Cook had a credit account (No. 0323552725) with Washington Mutual. Ms. Cook used the account to purchase goods and/or services for personal, family or household purposes. Any resulting obligation to pay money was a "debt" as the term is defined and used in the FDCPA and MCPA.

6. Ms. Cook became fully disabled, unable to work, and unable to pay the debt.

7. Ms. Cook's only source of income is her periodic Social Security Disability benefits. Ms. Cook has no income or assets that could be subject to attachment, garnishment or lien. Ms. Cook's income places her below the federal poverty level.

8. Among other things, Ms. Cook has dangerously high blood pressure. Telephone calls from debt collectors adversely affect Ms. Cook, causing her damage.

9. Ms. Cook disputes the amount of the debt.

10. Apparently, Washington Mutual or a successor in interest hired PFS to collect the

debt from Ms. Cook. Alternatively, PFS purchased the debt after the account was in default.

11. By letter dated September 23, 2008, PFS wrote Ms. Cook and demanded payment of the debt. A copy of the letter is attached hereto as Exhibit A.

12. In or about August or early September 2008, PFS began to communicate with Ms. Cook in efforts to collect the debt. Ms. Cook repeatedly explained to various PFS employees that she could not pay the debt.

13. In or about September 2008, PFS repeatedly telephoned Ms. Cook's daughter in efforts to collect the debt.

14. Ms. Cook does not reside with her daughter.

15. Ms. Cook does not share a telephone line with her daughter, nor is her daughter's telephone line linked or associated in any way with Ms. Cook.

16. When PFS telephoned Ms. Cook's daughter, PFS was aware that the telephone number it was calling did not belong to Ms. Cook.

17. When PFS telephoned Ms. Cook's daughter, PFS already knew Ms. Cook's telephone number.

18. On or about September 18, 2008, a PFS employee identified as Edina spoke by telephone with Ms. Cook's daughter. In the ensuing conversation, the PFS employee communicated to Ms. Cook's daughter that PFS was attempting to collect a debt from Ms. Cook.

19. Ms. Cook never provided PFS with permission to communicate with her daughter with respect to the debt.

20. Ms. Cook repeatedly told PFS to stop calling her daughter. PFS did not stop and continued to telephone Ms. Cook's daughter.

21. The FDCPA states that a debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, except to acquire "location information" about the consumer. 15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

22. The FDCPA defines "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment." 15 U.S.C. § 1692a(7).

23. PFS wrongfully communicated with Ms. Cooks granddaughter for a purpose *other than* to acquire location information. Specifically, PFS wrongfully communicated to Ms. Cook's daughter that Ms. Cook owed a debt.

24. Ms. Cook resides in a boarding house, renting a room.

25. PFS repeatedly telephoned Ms. Cook's landlady and left automated messages on the landlady's answering machine, stating that PFS is a debt collector and requesting that Ms. Cook telephone PFS.

26. Ms. Cook's landlady repeatedly asked Ms. Cook to contact PFS and demand that it stop calling and leaving messages regarding debt collection on the landlady's telephone answering machine.

27. Ms. Cook does not share a telephone line with her landlady, nor is the telephone number linked or associated in any way with Ms. Cook.

28. When PFS telephoned Ms. Cook's landlady, PFS was aware that the telephone number it was calling did not belong to Ms. Cook.

29. When PFS telephoned Ms. Cook's landlady, PFS already knew Ms. Cook's telephone number.

30. Ms. Cook never provided PFS with permission to communicate with her landlady

4

with respect to the debt.

31. Ms. Cook repeatedly told PFS to stop calling her landlady. PFS did not stop and continued to telephone Ms. Cook's landlady.

32. The messages left by PFS on the answering machine belonging to Ms. Cook's landlady have had the effect of disclosing to a third-party that Ms. Cook owes a debt, violating 15 U.S.C. § 1692c(b).

33. In or about the first week of October 2008, Ms. Cook mailed a letter to PFS, stating that she refused to pay the debt and that she wished the debt collector to cease further communications with her. A copy of the letter is attached hereto as Exhibit A.

34. PFS received Exhibit A.

35. PFS continued to communicate with Ms. Cook and others with respect to the debt after receiving Exhibit A, violating 15 U.S.C. § 1692c(c).

36. On about October 14, 2008, Ms. Cook spoke by telephone with a PFS employee identified as Angel. Ms. Cook demanded that PFS stop telephoning her daughter and landlady. The PFS employee stated to Ms. Cook that derogatory information regarding the debt was being reported by the consumer reporting agencies on Ms. Cook's consumer reports (commonly referred to as a "credit report"). The PFS employee stated that if Ms. Cook did not pay the debt, the consumer reporting agencies would continue to include derogatory information regarding the debt on Ms. Cook's credit reports "until it gets taken care of."

37. The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, states that no consumer reporting agency may make any consumer report containing information regarding "accounts placed for collection or charged to profit and loss which antedate the report by more than seven

years." 15 U.S.C. § 1681c(a)(4). The running of the seven-year period begins "upon the expiration of the 180-day period beginning on the date of the commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action." 15 U.S.C. § 1681c(c)(1).

38. PFS misrepresented the length of time for which derogatory information regarding the debt could remain on Ms. Cook's consumer report.

39. PFS continued to telephone Ms. Cook's landlady almost daily and leave a message on her answering machine, disclosing that Ms. Cook owed a debt and demanding that Ms. Cook contact PFS.

40. On about November 3, 2008, Ms. Cook spoke by telephone with a PFS employee identified as Frank. Ms. Cook again demanded that PFS stop telephoning Ms. Cook's landlady.

41. PFS and its employees made false, deceptive, abusive and unfair statements in efforts to collect a debt.

42. The unlawful debt collection methods, acts and practices of PFS and its employees were willful. PFS and its employees willfully violated the FDCPA and MCPA.

43. As an actual and proximate result of defendant's acts and omissions, plaintiff has suffered actual damages and injury, including but not limited to, fear, stress, mental anguish, emotional stress, and suffering for which she should be compensated in an amount to be established by jury and at trial.

**V.  Claims for Relief**

**Count 1 – Fair Debt Collection Practices Act**

44. Plaintiff incorporates the foregoing paragraphs by reference.

45. Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

    a)     Defendant violated 15 U.S.C. § 1692b.

    b)     Defendant violated 15 U.S.C. § 1692c.

    c)     Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

    d)     Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt; and

    e)     Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff.

**Wherefore,** plaintiff seeks judgment against defendant for:

    a)     Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

    b)     Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    c)     Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3);

    d)     A declaration that defendant's practices violate the FDCPA; and

    e)     Such further relief as the court deems just and proper.

### Count 2– Michigan Collection Practices Act

46. Plaintiff incorporates the foregoing paragraphs by reference.

47. Defendant has violated the MCPA. Defendant's violations of the MCPA include, but are not necessarily limited to, the following:

a) Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b) Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, and (ii) the legal rights of a creditor or debtor;

c) Defendant violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt, including causing a telephone to ring or engaging a person in telephone conversation repeatedly, continuously, or at times or places which are known to be inconvenient to the debtor; and

d) Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to M.C.L. § 339.916(2);

b) Treble the actual damages pursuant to M.C.L. § 339.916(2);

c) Statutory damages pursuant to M.C.L. § 339.916(2); and

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: November 12, 2008

Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com